# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **JOHN ARNOLD, SID EDWARDS, CARLON FINLEY, and ROBERT UNDERWOOD, on behalf of themselves and all others similarly situated,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 3:09-cv-00744** **Judge Trauger** |
| **SCHREIBER FOODS, INC.,** | ) ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment filed by defendant Schreiber Foods, Inc. (Docket No. 33), the plaintiffs' response (Docket No. 42), and the defendant's reply (Docket No. 48). For the reasons discussed below, the defendant's motion will be granted in part and denied in part.

## FACTS

Schreiber Foods, Inc. ("Schreiber") operates a dairy processing plant in Antioch, Tennessee.[1] The plaintiffs are former plant employees who claim that Schreiber failed to pay

---

[1] Unless otherwise noted, the facts are drawn from the defendant's Statement of Undisputed Material Facts (Docket No. 39), the plaintiffs' response (Docket No. 44), and related declarations. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, the court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

1

them for time related to donning and doffing their uniforms.[2]

Because it is important for Schreiber to maintain a sanitary facility, the company requires employees to wear clean uniforms. Schreiber issues each employee 14 uniforms and, if the employee works in a cold area of the plant, a clean jacket. The uniforms consist of "uniform-style pants" and shirts "with industrial snaps that can quickly be stripped off in case of an emergency." (Docket No. 42 at 15.) Schreiber cleans and maintains the uniforms, and employees are forbidden from removing the uniforms from the premises.

The defendant's plant has men's and women's locker rooms, where each employee has a "personal locker" and a "clean uniform locker." The personal locker contains the employee's steel-toe safety boots, hard hat (or "bump cap"), safety glasses, and personal items, as well as the key to the employee's clean uniform locker. The clean uniform locker contains, as the name suggests, the employee's clean uniforms. This dual-locker setup enables Schreiber's cleaning service to deliver clean uniforms without accessing the employees' personal lockers.

Schreiber pays its hourly employees based on when they clock in and out of the plant's time clocks.[3] Time before clock-in and after clock-out is not compensated. Before clocking in, employees enter the plant and go to the locker room to don a clean uniform. While in the locker

---

[2] Although plaintiff Sid Edwards' declaration states that he is currently employed by Schreiber, it also states that he "worked for Schreiber until November 12, 2009." (Docket No. 42, Ex. 2 ¶ 3.) In any event, for convenience, the court will use the present tense when discussing the plaintiffs' work activities.

[3] The Complaint alleges that employees' pay begins at their scheduled start time, not necessarily when they clock in. (Docket No. 1 ¶ 21.) The plaintiffs have not presented any evidence on this point, however, so the court will assume for the purposes of this memorandum that employees are paid upon clocking in.

2

room, employees also don their boots, hard hat, and safety glasses. The plaintiffs claim that employees are required to wash their hands before leaving the locker room.

Upon exiting the locker room, employees enter a hallway that leads to the plant's production area. In the hallway, employees retrieve hairnets, beard nets, and earplugs from dispensers located across from the locker rooms. Then, employees clock in at a time clock located next to the entrance to the production area. Before entering the production area, employees must clean their boots by stepping in a sanitizing solution. The plaintiffs claim that they do this by stepping in a foot bath before leaving the locker room; the defendant claims that employees sanitize their boots by stepping on a solution-infused mat located next to the time clock.

The employees essentially perform this process in reverse when their shift is over. They clock out and walk to the locker room, where they place their hair and beard nets, earplugs, and uniforms in designated bins. Employees store their boots, hard hats, and safety glasses in their personal lockers and change into their street clothes. The plaintiffs claim that, before storing their boots, employees are required to spray them with a sanitizing spray located in the locker room. In contrast, plant manager William Merrick states in his declaration that sanitizing spray is available throughout the plant and that employees are not required to use it.

Employees receive two 15-minute paid breaks during the workday. The defendant offers a 30-minute unpaid lunch period, but if employees choose to take it, they are required to stay 30 minutes longer at the end of the day. Fewer than ten employees have taken unpaid breaks in the past five years, and "[i]t is common practice at the plant to go months without a single hourly

employee who works in the plant taking an unpaid break." (Docket No. 36 ¶ 29.) If employees leave the premises during lunch, they are required to doff their clean uniforms and re-don them before resuming work. The parties dispute whether employees are allowed to wear their uniforms while retrieving items from their cars.

The defendant's plant is unionized, and the United Food and Commercial Workers Union ("UFCW") is the exclusive bargaining agent for all hourly employees. In September 2004, Schreiber and the UFCW negotiated a new collective-bargaining agreement. One of the UFCW's proposals was for Schreiber to compensate employees for time spent donning and doffing uniforms at the beginning and end of the workday. After further negotiation, this proposal was withdrawn, and it was not included in the final agreement. The same thing happened when the two sides negotiated a new agreement in 2008.

## ANALYSIS

The plaintiffs have filed a putative collective action, alleging that the defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, by failing to pay them for compensable work performed before clocking in and after clocking out. The defendant has filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

### I.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) requires the court to grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." If a moving defendant shows that there is no genuine issue of

4

material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan*, 578 F.3d at 374.

"'[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II.     Relevant Statutory Framework

In 1938, Congress enacted the Fair Labor Standards Act ("FLSA") to ensure a "minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The statute provides that employers must pay time-and-a-half overtime compensation to covered employees who work more than 40 hours in a workweek. *Id.* § 207(a).

This requires courts to determine (1) what counts as "work" and (2) how to calculate the number of hours worked. The Supreme Court initially took a broad view of these questions. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005) (citing *Tenn. Coal, Iron & R.R. Co. v. Muscoda*

5

*Local No. 123*, 321 U.S. 590 (1944); *Armour & Co. v. Wantock,* 323 U.S. 126 (1944); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)). In response, Congress passed the Portal-to-Portal Act, which narrowed the coverage of the FLSA, in 1947. Specifically, the act provides that an employee's "preliminary" and "postliminary" activities are non-compensable:

> Activities not compensable. . . . [N]o employer shall be [liable] on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for . . . –
>
> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

Since 1947, the Department of Labor has applied the "continuous workday rule," "which means that the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" *IBP*, 546 U.S. at 29 (quoting 29 C.F.R. § 790.6(a) (2005)). Activities that take place between the first and last principal activities of the day are thus generally compensable, because they occur during the workday. *Id.* at 28-29, 37, 40. The Supreme Court has consistently interpreted "principal activity or activities" to include "'all activities which are an integral and indispensable part of the principal activities.'" *Id.* at 29-30 (quoting *Steiner v. Mitchell*, 350 U.S. 247, 252-53 (1956))

6

(internal quotation marks omitted).

In 1949, Congress further narrowed the scope of the FLSA by adding § 203(o). This subsection limits employers' obligation to pay employees for time spent changing clothes:

> Hours Worked. In determining . . . the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

29 U.S.C. § 203(o).

## III.     Compensation for Donning and Doffing Uniforms

The plaintiffs' primary claim is that Schreiber failed to pay them for time spent donning and doffing their uniforms. Section 203(o) allows an employer, in connection with a valid collective-bargaining agreement,[4] to exclude "any time spent in changing clothes or washing at the beginning or end of each workday" from an employee's compensable hours. 29 U.S.C. § 203(o). The statute does not define "changing clothes." The plaintiffs argue that Schreiber's uniforms, which consist of a shirt, pants, and boots, are not "clothes" because the company requires them for sanitary purposes. This argument runs counter to both common sense and the weight of precedent.

When interpreting a federal statute, a court must "'give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear

---

[4] The plaintiffs do not dispute the existence of a valid, applicable collective-bargaining agreement, the terms of which permit Schreiber to not pay employees for donning and doffing time.

Case 3:09-cv-00744     Document 56     Filed 02/01/2010     Page 7 of 25

some different import.'" *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 447 (6th Cir. 2009) (quoting *Williams v. Taylor*, 529 U.S. 420, 431 (2000)). "The dictionary defines 'clothes' as 'clothing,' which itself is defined as 'covering for the human body or garments in general: all the garments and accessories worn by a person at any one time.'" *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 955 (11th Cir. 2007) (quoting Webster's Third New Internat'l Dictionary 428 (unabridged) (1986)); *Sepulveda v. Allen Family Foods, Inc.*, No. 08-2256, 2009 U.S. App. LEXIS 28588, at *11 (4th Cir. Dec. 29, 2009). If shirts, pants, and boots do not fall within this definition, it is difficult to imagine what does.

The Sixth Circuit has not spoken on the issue, but the Fourth, Fifth, and Eleventh Circuits have interpreted "clothes," as used in § 203(o), to cover the items at issue here, including the mandated hard hats, safety glasses, earplugs, and hair and beard nets. *Sepulveda*, 2009 U.S. App. LEXIS 28588 at *2-3, 11 (finding that smocks, aprons, gloves, arm shields, steel-toe shoes, hard hats, safety glasses, earplugs, and hair nets are "clothes"); *Cagle's*, 488 F.3d at 949, 956 (same, for smocks, gloves, hearing protection, and hair and beard nets); *Bejil v. Ethicon, Inc.*, 269 F.3d 477, 480 n.3 (5th Cir. 2001) (same, for lab coats, "dedicated shoes," and hair and beard nets). The majority of district courts to address the issue have reached the same conclusion.[5]

---

[5] *See, e.g.*, *Andrako v. U.S. Steel Corp.*, 632 F. Supp. 2d 398, 402, 409 (W.D. Pa. 2009) (finding that flame retardant jackets and pants, boots, gloves, hoods, hard hats, safety glasses, and hearing protection are "clothes"); *Johnson v. Koch Foods, Inc.*, No. 2:07-CV-51, 2009 U.S. Dist. LEXIS 106058, at *4, 25 (E.D. Tenn. Nov. 13, 2009) (same, for smocks, boots, hard hats, earplugs, and hair and beard nets); *Sandifer v. U.S. Steel Corp.*, No. 2:07-CV-443, 2009 U.S. Dist. LEXIS 96715, at *21 (N.D. Ind. Oct. 15, 2009) (same, for jackets, pants, hoods, and boots); *Hudson v. Butterball, LLC*, No. 08-5071-CV-SW-RED, 2009 U.S. Dist. LEXIS 104649, at *3 n.2, 7 (W.D. Mo. Oct. 14, 2009) (same, for smocks, aprons, coveralls, boots, gloves, hard hats, safety glasses, earplugs, and hair nets); *Sisk v. Sara Lee Corp.*, 590 F. Supp. 2d 1001, 1003, 1009

8

This court agrees with the majority view.

Compared to shirts and pants, it is arguably a closer call whether hard hats, safety glasses, earplugs, and hair and beard nets are "clothes." Nevertheless, these items comfortably fall within the "accessories" mentioned in the definition adopted by *Cagle's* and *Sepulveda*. It is significant that § 203(o) uses "clothes" as part of the larger phrase "changing clothes." As is often the case, the definition of the phrase is more than the sum of the definitions of its component words.[6] "Changing clothes," particularly in the context of an employee preparing for work, essentially means "changing into a different outfit." This makes it especially appropriate to define "clothes" to include accessories such as hard hats and hairnets, because the dictionary defines "outfit" as "a set of usually matching or harmonious garments *and accessories* worn together."[7] Random House Webster's Unabridged Dictionary 1374 (2d ed. 1998) (emphasis

_____

(W.D. Tenn. 2008) (same, for frocks, coats, steel-toe boots, and gloves); *Gatewood v. Koch Foods of Miss., LLC*, 569 F. Supp. 2d 687, 689-90, 700 n.24 (S.D. Miss. 2008) (same, for smocks, eye protection, earplugs, and hair and beard nets); *Figas v. Horsehead Corp.*, No. 06-1344, 2008 U.S. Dist. LEXIS 87199, at *4, 41 (W.D. Pa. Sept. 3, 2008) (same, for flame retardant jackets and pants, work shoes, and hard hats); *Kassa v. Kerry, Inc.*, 487 F. Supp. 2d 1063, 1066-67 (D. Minn. 2007) (same, for shirts, pants, smocks, and safety glasses); *Davis v. Charoen Pokphand (USA), Inc.*, 302 F. Supp. 2d 1314, 1319, 1321 (M.D. Ala. 2004) (same, for smocks, aprons, boots, gloves, earplugs, and hairnets); *Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556, 561, 564-65 (E.D. Tex. 2001) (implicitly finding that smocks, aprons, gloves, boots, earplugs, and hairnets are "clothes"), *abrogated on other grounds by IBP*, 546 U.S. 21; *Saunders v. John Morrell & Co.*, No. C88-4143, 1991 U.S. Dist. LEXIS 21069, at *2, 10-11 (N.D. Iowa Dec. 24, 1991) (same, for aprons, gloves, helmets, boots, and goggles).

[6] For example, a person who cuts a shirt in half with scissors is, in some sense, changing clothes, because he or she is altering an item of clothing. But this is plainly not what Congress meant by "changing clothes."

[7] Notably, the dictionary also defines "outfit" as "an assemblage of articles that equip a person for a particular task, role, trade, etc." Random House Webster's Unabridged Dictionary 1374 (2d ed. 1998).

9

added).  Regardless, even if these items are not "clothes," the time spent donning and doffing them is non-compensable because it is *de minimis*.  *Alvarez v. IBP, Inc.*, 339 F.3d 894, 903-04 (9th Cir. 2003) ("[T]ime spent donning and doffing non-unique protective gear . . . 'is *de minimis* as a matter of law.'"), *aff'd on other grounds*, 546 U.S. 21; *Von Friewalde v. Boeing Aero. Operations, Inc.*, 339 Fed. Appx. 448, 454 (5th Cir. 2009) ("[D]onning and doffing generic safety gear (e.g., hearing and eye protection) involved a *de minimis* amount of time . . . ."); *Sandifer v. U.S. Steel Corp.*, No. 2:07-CV-443, 2009 U.S. Dist. LEXIS 96715, at *22 (N.D. Ind. Oct. 15, 2009); *Kassa v. Kerry, Inc.*, 487 F. Supp. 2d 1063, 1067 n.1 (D. Minn. 2007).

The Department of Labor, which administers the FLSA, has issued advisory opinions defining "clothes" to "include items worn on the body for covering, protection, or sanitation." U.S. Dep't of Labor, Wage & Hour Div. Advisory Op. Ltr. No. FLSA2002-2 (June 6, 2002); *see also* U.S. Dep't of Labor, Wage & Hour Div. Advisory Op. Ltr. No. FLSA2007-10 (reiterating this view).  This definition clearly covers the items at issue here.  Although earlier advisory opinions from 1997 and 2001 excluded protective clothing from 203(o)'s coverage, the more recent opinions are still entitled to deference, to the extent that they are persuasive.  *Cagle's*, 488 F.3d at 956 (finding the recent opinions "more persuasive than the earlier ones").

The court's decision to treat Schreiber's uniforms as "clothes" also accords with the purpose of the FLSA, as amended.  Congress passed the Portal-to-Portal Act because the Supreme Court's expansive initial interpretation of the FLSA evidenced a "disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon

10

employers." 29 U.S.C. § 251(a). Similarly, it passed § 203(o) to "'avoid[] another series of incidents which led to the portal-to-portal legislation.'" *Cagle's*, 488 F.3d at 958 (quoting 95 Cong. Rec. 11,433 (daily ed. Aug. 10, 1949)). In both instances, Congress intended the legislation "to give employers and employees greater latitude to determine when the work day begins and ends." *Sepulveda*, 2009 U.S. App. LEXIS 28588 at *18. As the Fourth Circuit recently explained:

> First of all, Congress recognized that employers and unions are in a better position than either courts or agencies to 'thresh[] out' how many minutes of compensable time to allocate to which tasks of 'changing clothes.' While employers and employee representatives can tailor solutions at the bargaining table to fit their particular circumstances and while negotiating parties can modify those solutions to address changing conditions, courts and agencies would find themselves in a morass of difficult, fact-specific determinations if they were ultimately charged with deciding whether and how much of this time is compensable. In short, the statute evidences a preference for private resolution of such workplace concerns, rather than management of small increments of time and particular items of clothing through the judiciary.
>
> Second, collective bargaining allows employers and unions to reach agreements that leave both sides more satisfied than a government-imposed solution would. . . . Taking this issue out of the give-and-take of the collective-bargaining process and putting it in courts or agencies could preclude such flexible and mutually preferable agreements.

*Id.* at *21-22 (citation omitted). Here, Schreiber and the plaintiffs' union mutually agreed, after bargaining, that doffing and donning time would remain uncompensated. Accepting the plaintiffs' narrow and counterintuitive definition of "clothes," in contravention of this collective-bargaining agreement, would upset the policy goals behind the Portal-to-Portal Act and § 203(o).

11

The plaintiffs' main argument is that clothing items are not "clothes" if they are mandated by an employer for sanitary purposes. (Docket No. 42 at 13-14.) The plaintiffs claim that they did not engage in "run of the mill, everyday clothes changing, but rather [in] highly controlled and regulated sanitation activities," and they distinguish previous cases as dealing with protective clothing, not sanitary clothing. (*Id.* at 2, 17.) The court is unconvinced. First, many of the cases cited above *do* deal with clothing worn for sanitary purposes, such as aprons and smocks, donned in accordance with an employer's mandatory procedures. Second, just as "[s]ection 203(o) makes no distinction between protective and non-protective clothes," *Sepulveda*, 2009 U.S. App. LEXIS 28588 at *13, it does not distinguish between clothes worn for sanitary purposes and clothes worn for other purposes.

The plaintiffs cite the Ninth Circuit's decision in *Alvarez*. That case held that § 203(o) is an "exemption" to the FLSA, which must be narrowly construed against employers and must be applied only if a situation falls "plainly and unmistakably" within the exemption.[8] *Alvarez*, 339 F.3d at 905. *Alvarez* drew a distinction between "clothes" and "specialized protective gear," explaining that such gear included things like bulletproof vests and environmental spacesuits. *Id.* Based on that distinction, the Ninth Circuit affirmed the lower court's decision that

_____

[8] This holding has been rejected by the Fifth and Eleventh Circuits, which found that, because § 203(o) is an exclusion within a definition, it does not need to be narrowly construed. *Allen v. McWane, Inc.*, No. 08-41037, 2010 U.S. App. LEXIS 487, at *21-22 (5th Cir. Jan. 8, 2010); *Cagle's*, 488 F.3d at 957-58. Regardless, the court "need not enter this debate. Even if [a narrow] standard of interpretation applies, [the court] must still 'giv[e] due regard to the plain meaning of statutory language and the intent of Congress.'" *Sepulveda*, 2009 U.S. App. 28588 at *10-11 n.1 (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)) (last alteration in original). Even narrowly defined, the word "clothes" encompasses shirts, pants, and boots.

12

protective and sanitary equipment donned by workers at a meat processing plant, including gloves, sleeves, aprons, safety boots, weigh-lifting-type belts, and chain-link protective gear, fell outside of § 203(o)'s coverage. *Id.* at 898 n.2, 905.

But even *Alvarez* distinguished between specialized protective gear, "non-unique protective gear," and "typical clothing." *Id.* at 903-05. Employees are not guaranteed compensation for donning items in the latter two categories. Applying these categories to the instant case, the court finds that hard hats, safety glasses, earplugs, and hairnets are non-unique protective gear, and shirts, pants, and boots are "typical clothing." Thus, even under *Alvarez*, the items here are covered by § 203(o).

The plaintiffs rely primarily on two cases from the Western District of Wisconsin, *Hoyt v. Ellsworth Cooperative Creamery*, 579 F. Supp. 2d 1132 (W.D. Wis. 2008), and *Spoerle v. Kraft Foods Global, Inc.*, 527 F. Supp. 3d 860 (W.D. Wis. 2007).[9] In *Spoerle*, the plaintiffs were meat processing plant employees who were required to wear paper frocks, plastic aprons, coats, slickers, gloves, hard hats, steel-toe boots, safety glasses, earplugs, and hair and beard nets. 527

---

[9] The court has only found a handful of other cases applying a narrow definition of "clothes." *Perez v. Mountaire Farms, Inc.*, No. AMD 06-121, 2008 U.S. Dist. LEXIS 52844, at *15-16 (D. Md. June 10, 2008) (finding that lab coats, aprons, steel-toe boots, gloves, hard hats, safety glasses, earplugs, and hair nets are not "clothes"); *In re Cargill Meat Solutions Wage & Hour Litig.*, 632 F. Supp. 2d 368, 383, 385 (M.D. Pa. 2008) (same, for smocks, steel-toe boots, gloves, hard hats, safety glasses, earplugs, and hair nets); *Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912, 916, 931 (N.D. Ill. 2003) (same, for helmets, smocks, aprons, belly guards, sleeves, and gloves); *Fox v. Tyson Foods, Inc.*, No. CV-99-TMP-1612-M, 2001 U.S. Dist. LEXIS 26050, at *12, 24 (N.D. Ala. Feb. 13, 2001) (same, for smocks, aprons, gloves, face shields, and guards), *overruled by Fox v. Tyson Foods, Inc.*, No. 4:99-CV-1612-VEH, 2007 U.S. Dist. LEXIS 96846, at *4 (N.D. Ala. Aug. 31, 2007).

Of these cases, *Perez* and *Fox* were abrogated by the Fourth Circuit's decision in *Sepulveda* and the Eleventh Circuit's decision in *Cagle's*, respectively.

13

F. Supp. 2d at 862. The court rejected the definition of "clothes" given in *Cagle's* and *Bejil*, *id.* at 866, and instead stated:

> "[C]hanging clothes" is "an everyday, plain-language term that describes what most people do every day – taking off pajamas to put on work clothes in the morning, or taking off dress clothes to put on casual wear in the evening." This view makes the relevant questions straight forward: Is the article something the employee would normally wear anyway (or does it replace such clothing)? Or is it something the employee wears in addition to those clothes and is required to do so for a job-related reason?

*Id.* at 867 (quoting *Fox v. Tyson Foods, Inc.*, No. CV-99-TMP-1612-M, 2001 U.S. Dist. LEXIS 26050, at *22 (N.D. Ala. Feb. 13, 2001), *overruled by Fox v. Tyson Foods, Inc.*, No. 4:99-CV-1612-VEH, 2007 U.S. Dist. LEXIS 96846, at *4 (N.D. Ala. Aug. 31, 2007)). The court then reasoned that "safety and sanitation equipment" worn "for a uniquely job-related purpose" could not count as "clothes" under § 203(o). *Id.* at 868.

*Hoyt* relied on *Spoerle* to hold that "sanitary/safety uniforms" worn by the plaintiff dairy plant employees, which consisted of "clean pants, a clean shirt, a hairnet and a hard hat," were outside the scope of § 203(o). 579 F. Supp. 2d at 1136, 1140. The court noted that the shirts and pants at issue were (1) donned and doffed at the defendant's plant, (2) cleaned by the defendant, and (3) required by the defendant to ensure sanitary product, in accordance with state law. *Id.* at 1140. From this, the *Hoyt* court reached the remarkable conclusion that clean shirts and pants were "not similar to everyday clothing worn for plaintiffs' convenience" and thus were not "clothes" under § 203(o). *Id.*

The decision in *Hoyt* is contrary to the statute's plain meaning, the majority view, and common sense. Shirts and pants do not cease to be clothes simply because they are worn for an

employer's benefit and stored in an employer's locker room.  *See Kassa*, 487 F. Supp. 2d at 1066 ("Regardless of whether it is labeled 'personal protective equipment' or something else, a hair net is still a hair net, pants are still pants, and a smock is still a smock.").  Indeed, it is beyond question that any reasonable definition of "clothes," as the term is commonly understood, includes shirts and pants.  This court declines to follow *Spoerle* and *Hoyt* because those cases ignore the plain text of § 203(o).

In sum, the court finds that the items composing Schreiber's uniform and the related accessories – shirts, pants, jackets, hard hats, safety glasses, earplugs, and hair and beard nets – are "clothes" under § 203(o), and Schreiber is not required to pay its employees for time spent donning and doffing them.  The court will dismiss this portion of the plaintiffs' claim.

**IV.    Compensation for Other Activities**

The plaintiffs argue that, regardless of § 203(o), they are still due compensation for (1) time spent donning and doffing uniforms during the half-hour unpaid lunch break, and (2) unpaid sanitizing, travel, and waiting time at the start and end of the day.  (Docket No. 42 at 20.)

**1.    Lunch Period**

The plaintiffs claim that Schreiber must compensate employees for time spent doffing and re-donning their uniforms during their optional 30-minute unpaid lunch period.

An employer is not required to pay employees for a 30-minute "bona fide meal period." 29 C.F.R. § 785.19(a) (2009).  A meal period is bona fide "[a]s long as the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer's benefit."  *Hill v.*

15

*United States*, 751 F.2d 810, 814 (6th Cir. 1984).

Here, it is undisputed that employees may remain in their uniforms if they stay on Schreiber's premises during the lunch period. (Docket No. 44 ¶ 29.) A map of the defendant's plant indicates that there is a break room for employees. (Docket No. 36, Ex. 1.) Nothing suggests that an employee cannot simply bring a lunch to work, store it in his or her locker, and eat it in the break room without doffing or re-donning the uniform.[10]

The plaintiffs, then, are essentially complaining that they are hampered from eating lunch off premises. But the ability to spend 30 minutes outside the place of employment is not a requirement of a bona fide lunch break. *See* 29 C.F.R. § 785.19(b) ("It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period."). The FLSA does not require compensation for lunchtime donning and doffing that is necessary only because an employee chooses to leave the employer's premises. This aspect of the plaintiffs' claim will be dismissed.

### 2. Post-Donning and Pre-Doffing Travel and Waiting Time

Next, the plaintiffs argue that, because their workday begins when they don their uniforms and ends when they doff them, post-donning and pre-doffing "travel and waiting time" is compensable. (Docket No. 42 at 20.)

Under the continuous workday rule, the workday begins at the commencement of the employee's "principal activities," which include activities that are an "'integral and

---

[10] Given that employees rarely take the a 30-minute unpaid lunch, this must be what they do during their 15-minute paid breaks.

indispensable part of the principal activities.'" *IBP*, 546 U.S. at 30 (quoting *Steiner*, 350 U.S. at 252-53).  The factors relevant to determining whether an activity is integral and indispensable are (1) whether the activity is required by the employer, (2) whether the activity is necessary to the employee's principal activities, and (3) whether the benefit of the activity inures primarily to the employer.  *Jordan v. IBP, Inc.*, 542 F. Supp. 2d. 790, 808 (M.D. Tenn. 2008) (citing *Alvarez*, 339 F.3d at 902-03; *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007)).  "The changing of clothes may be considered integral and indispensable to an employee's principal activities 'where the changing of clothes *on the employer's premises* is required by law, by rules of the employer, or by the nature of the work.'"  *Id.* (quoting *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004)).

Here, it is at least a question of fact whether the act of donning and doffing uniforms is integral and indispensable to the plaintiffs' job.[11]  It is undisputed that Schreiber requires its employees to wear clean uniforms, as mandated by Tennessee state regulations.  *See* Tenn. Dep't of Agric. Rule 0080-3-3-.04(5) (requiring that dairy plant employees who engage in the "manufacturing, packaging, or handling dairy products" wear "[c]lean white or light-colored washable outer garments").  Employees are required to don the uniforms at Schreiber's plant, and the benefit of the sanitary uniforms to Schreiber is obvious – it allows the company to create uncontaminated food products.  Numerous cases involving similar circumstances have found that

---

[11] The factors used to determine whether an activity is integral and indispensable are basically the same as those used to determine whether the activity is "work."  *Jordan*, 542 F. Supp. 2d at 808.  In fact, some courts effectively collapse the two analyses into one.  *Id.* at 808 n.22.  Thus, it is also at least a question of fact whether donning and doffing Schreiber's uniforms is "work" under the FLSA.

17

donning and doffing uniforms can be an integral and indispensable activity. *E.g.*, *Jordan*, 542 F. Supp. 2d at 810 (finding that it was integral and indispensable for meat processing plant employees to don and doff safety and sanitary gear); *Johnson v. Koch Foods, Inc.*, No. 2:07-CV-51, 2009 U.S. Dist. LEXIS 106058, at *28-30 (E.D. Tenn. Nov. 13, 2009) (finding a question of fact as to whether donning and doffing safety and sanitary gear was integral and indispensable for chicken processing plant employees); *Gatewood v. Koch Foods of Miss., LLC*, 569 F. Supp. 2d 687, 696-98 (S.D. Miss. 2008) (same). A reasonable jury could find that, under the continuous workday rule, the plaintiffs' workday starts when they don their uniforms and ends when they doff them.

"[D]uring a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of [§ 254(a)], and as a result is covered by the FLSA." *IBP*, 546 U.S. at 37. Each day, Schreiber employees spend time walking and waiting (1) after donning their uniforms but before clocking in, and (2) after clocking out but before doffing their uniforms. Disregarding § 203(o), and assuming that donning and doffing is integral and indispensable, this walking and waiting time is compensable.

This raises two questions. The first is whether § 203(o) affects the compensability of the plaintiffs' walking and waiting time.[12] Courts are split on this issue. Some courts have held that when donning and doffing "is excluded from hours worked under § 203(o), [post-donning and

---

[12] *IBP*, which was an appeal from the Ninth Circuit's decision in *Alvarez*, did not address § 203(o), because the defendant did not appeal the circuit court's determination that time spent donning and doffing protective gear was compensable. 546 U.S. at 32.

pre-doffing] walking time [does] not follow or precede a principal work activity, and therefore is not compensable."[13] *Hudson v. Butterball, LLC*, No. 08-5071-CV-SW-RED, 2009 U.S. Dist. LEXIS 104649, at *11 (W.D. Mo. Oct. 14, 2009); *see also Sisk v. Sara Lee Corp.*, 590 F. Supp. 2d 1001, 1011 (W.D. Tenn. 2008) ("[O]nce an activity has been deemed a section 3(o) activity, it cannot be considered a principal activity.") This accords with the Department of Labor's current view that "activities covered by section 3(o) cannot be considered principal activities and do not start the workday."[14] U.S. Dep't of Labor, Wage & Hour Div. Advisory Op. Ltr. No. FLSA2007-10.

A greater number of courts, however, have held that determining what constitutes a "principal activity" and determining what constitutes "changing clothes" are separate inquiries. Even if time spent donning a uniform is non-compensable under § 203(o), it still might start the workday, making subsequent activities compensable under § 254(a) and the continuous workday rule. *See Sandifer,* 2009 U.S. Dist. LEXIS 96715 at *40 ("The court can't conclude as a matter of law that the non-compensability . . . under [§ 203(o)] excludes consideration of whether, pursuant to [§ 254(a)], those activities are an integral and indispensable part of the employees' principal activities . . . ."); *Andrako v. United States Steel Corp.*, 632 F. Supp. 2d 398, 412-13

---

[13] *Sepulveda* effectively denied compensation for post-donning and pre-doffing time, but it did not explicitly address the interplay of § 203(o) and the continuous workday rule. The plaintiffs in that case sought compensation for, among other things, "time spent . . . walking to and from the production area." 2009 U.S. App. LEXIS 28588 at *4. But in explaining its reasoning, the court did not discuss walking time; it appears that the court assumed that post-donning walking time was a part of the clothes-changing process.

[14] The persuasiveness of the opinion letter on this issue is undercut by the fact that the Department of Labor does not explain its reasoning. *Sandifer,* 2009 U.S. Dist. LEXIS 96715 at *38-39.

(W.D. Pa. 2009) ("Section 203(o) relates to the compensability of time spent donning, doffing, and washing in the collective-bargaining process. It does not render such time any more or less integral or indispensable to an employee's job."); *Johnson*, 2009 U.S. Dist. LEXIS 106058 at *32 ("[I]f the donning, doffing, and washing excluded by § 203(o) are determined by the trier of fact to be integral and indispensable, those activities could commence the workday."); *Gatewood*, 569 F. Supp. 2d at 702 ("Although the statute precludes recovery for time spent washing and 'changing clothes,' it does not affect the fact that these activities could be the first 'integral and indispensable' act that triggers the start of the continuous workday rule for subsequent activities . . .."); *Figas v. Horsehead Corp.*, No. 06-1344, 2008 U.S. Dist. LEXIS 87199, at *66-67 (W.D. Pa. Sept. 3, 2008) ("The Court is not convinced that § 203(o) changes the 'principal' nature of donning and doffing activities, or that 'principal' activities somehow become 'preliminary' or 'postliminary' under the Portal Act simply because they are rendered noncompensable by a collective-bargaining agreement in accordance with § 203(o).").

The court agrees that this is the best way to reconcile the application of § 203(o) with Supreme Court precedent. In *IBP*, the Supreme Court made it clear that the continuous workday starts upon the employee's first principal activity. 546 U.S. at 29, 37. Logically, whether an activity counts as "changing clothes" under § 203(o) does not necessarily affect whether it is a principal activity.[15] One court found it odd that the uncompensated act of changing clothes

---

[15] In fact, § 203(o), by its terms, applies only to clothes changing that occurs "at the beginning or end of each workday." This implies that such activities are work and that the continuous-work-day clock has already started to run. *See De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 373 (3d Cir. 2007) ("[Section 203(o)] provides at least some indication that [clothes changing] is itself properly considered 'work' under the FLSA."); *Steiner*, 350 U.S. at 255

20

might convert an employee's subsequent, otherwise-non-compensable activity into compensable activity. *Sisk*, 590 F. Supp. 2d at 1011. But this oddity diminishes as the period of the subsequent activity grows longer. For example, if an employer required employees to don uniforms in a company locker room and then spend 30 minutes traveling to a work site, it would not seem "illogical," *id.*, to require the employer to pay for the travel time. The court finds that § 203(o) does not bar the plaintiffs from receiving compensation for post-donning and pre-doffing activities.

The second question is whether the plaintiffs' walking and waiting time is non-compensable because it is *de minimis*. "When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act." *Mt. Clemens Pottery*, 328 U.S. at 692.

Courts look to three factors in deciding whether otherwise compensable time is *de minimis*: "1) the practical administrative difficulty of recording the additional time; 2) the size of the claim in the aggregate; and 3) whether 'the claimants performed the work on a regular basis.'" *Brock v. City of Cincinnati*, 236 F.3d 793, 804 (6th Cir. 2001) (quoting (*Lindow v. United States*, 738 F.2d 1057, 1062-63 (9th Cir. 1984)). Although there is no rigid mathematical rule, "[m]ost courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable." *Lindow*, 738 F.2d at 1062; *see also Von Friewalde*, 339 Fed.

_____

(noting that 203(o) applies to "clothes changing and washing, which are otherwise a part of the principal activity").

Appx. at 454. "The burden is on the employer to show that the time consumed by the activity is de minimis." *Gilmer v. Alameda-Contra Costa Transit Dist.*, No. C 08-05186, 2010 U.S. Dist. LEXIS 3405, at *24 (N.D. Cal. Jan. 15, 2010) (citing *Rutti v. Lojack Corp., Inc.*, 578 F.3d 1084, 1095 n.11 (2009)).

As explained earlier, § 203(o) covers the plaintiffs' clothes-changing activities through the time that they retrieve and don their hairnets, beard nets, and earplugs. According to the plaintiffs' declarations, "[o]nce the Workers retrieve their hairnets, beard nets (if applicable), and ear plugs, the Workers clock-in." (*E.g.*, Docket No. 42, Ex. 1 ¶ 12). The hairnet, beard net, and earplug dispensers are located approximately 40 feet from the time clocks. (Docket No. 36, Ex. 1.) Although it seems unlikely that this journey takes a significant amount of time, it is possible that employees are forced to wait for some period of time before clocking in. The defendant has not presented evidence directly addressing this matter, so it has not met its burden of showing that the walking and waiting time is *de minimis*. Therefore, the court cannot dismiss this aspect of the plaintiffs' claim at this stage.

### 3. Time Spent Sanitizing Boots

Finally, the plaintiffs argue that they should be compensated for time spent sanitizing their boots. According to the plaintiffs, employees sanitize their boots before their shift by stepping in a foot bath and after their shift by spraying the boots with a sanitizing solution.

Section 203(o) allows employers to not pay employees for time spent "washing" at the beginning and end of the workday. That term, as used in the statute, is ambiguous. "Anything can be 'washed,' but clearly the drafters of § 203(o) did not intend *any* [*and all*] washing or

22

cleaning activity to be excluded, or employees could be required to wash, clean, scrub, and sanitize any property of the employer without compensation under the FLSA." *Burks v. Equity Group-Eufaula Div., LLC*, 571 F. Supp. 2d 1235, 1243 (M.D. Ala. 2008). Thus, in applying the statute, the court is guided by persuasive authority, including legislative history and other courts' interpretations of the statute. *Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979, 986 (6th Cir. 2009).

The vast majority of courts to address the issue have held that § 203(o) only covers time spent by an employee washing his or her body, not his or her work equipment.[16] *Burks*, 571 F. Supp. 2d at 1243-44 (collecting cases); *see also, e.g.*, *Johnson*, 2009 U.S. Dist. LEXIS 106058 at *26-27; *Andrako*, 632 F. Supp. 2d at 411. Legislative history supports this conclusion. "The Conference Report on the 1949 amendment stated with respect to [the] definition [of "washing"], '[t]he conference agreement limits this exclusion to time spent by the employee in changing clothes and *cleaning his person* at the beginning or at the end of each work day.'" *Burks*, 571 F. Supp. 2d at 1244 (quoting H.R. Rep. No. 81-1453, *reprinted in* 95 Cong. Rec. H194, 14995 (daily ed. Oct. 17, 1949)). The court finds that time spent sanitizing boots does not count as

---

[16] One notable exception is *Sepulveda*. In that case, the Fourth Circuit rejected the plaintiffs' contention that "washing" did not cover the act of washing their gear: "Like the word 'clothes,' the word 'washing' is not qualified. We see no reason, therefore, to treat 'washing' differently than 'clothes.' The basic problem with the employees' complaint is that it seeks to qualify the words 'washing' and 'clothes,' but the statute simply does not read that way." 2009 U.S. App. LEXIS 28588 at *17 n.4.

But one difference between the two words is that, as used in § 203(o), "clothes" is a noun, whereas "washing" is a verb. The statute is silent as to *what* the employee can wash, so it forces courts to infer an object noun. Given the statute's legislative history and the fact that showering, unlike other kinds of "washing," is generally associated with changing one's clothes, this court declines to adopt the Fourth Circuit's unlimited interpretation of "washing."

23

"washing" under § 203(o), meaning that such time is compensable if the activity is found to be integral and indispensable.[17]

It is probable, however, that this time is *de minimis*. Plaintiffs' declarations state that "Schreiber instructs Workers to step in a rubber foot bath filled with a sanitation solution," and "[b]efore storing their steel-toed boots, the Workers spray their boots with a sanitation solution." (*E.g.*, Docket No. 42, Ex. 5 ¶¶ 10, 14.) It seems unlikely that these actions take more than a few seconds to complete. But, again, the defendant has not presented evidence on this point. (*See* Docket No. 46 ¶ 3 (declaration of plant manager discussing sanitizing procedures, but stating that he is "not offering any facts or opinions in this declaration related to the length of time . . . to perform [employees'] pre-shift, post-shift or break activities").) Accordingly, the court cannot, at this stage, find that the time spent sanitizing boots is *de minimis*.

## CONCLUSION

For all of the reasons discussed above, the court will grant in part and deny in part the defendant's Motion for Summary Judgment. The plaintiffs cannot recover for time spent donning and doffing their uniforms, so that portion of their claim will be dismissed. The plaintiffs' claim remains only to the extent that they seek to recover for (1) time spent sanitizing their boots, (2) pre-shift time after donning hairnets, beard nets, and earplugs, but before clocking in, and (3) post-shift time after clocking out, but before doffing uniforms. Of course, the defendant may succeed in establishing that the time spent on these activities is *de minimis*.

---

[17] Section 203(o) does, however, clearly apply to the time that employees spend washing their hands.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge